UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEMONE JOHN FOX,

    Plaintiff,

v.                                         Case No. 2:09-cv-160
                                         HON. GORDON J. QUIST
DIANE KOSKINEN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Demone John Fox, an inmate currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). On January 28, 2010, plaintiff filed an amended complaint naming defendants Diane Koskinen and P. Turner. On May 5, 2010, service was ordered on these defendants.

Plaintiff's complaint alleges that on October 23, 2008, he filed a grievance on defendant Koskinen after she falsely reported that plaintiff had assaulted her. Defendant Koskinen was employed at the Baraga Correctional Facility as a G.E.D. teacher. While defendant Koskinen was sitting in a chair in her classroom, plaintiff came up from behind her and pushed her chair. Plaintiff was initially found guilty of the misconduct charge of assault and battery on November 6, 2008. Plaintiff's request for a rehearing was granted and the assault finding was removed from plaintiff's record and he was found guilty of insolence. Plaintiff claims that he was wrongfully held in administrative segregation in retaliation for his grievance filings.

Plaintiff alleges that defendant Turner filed several retaliatory false misconduct charges against him to keep plaintiff in administrative segregation. Plaintiff alleges that he lost over 80 days of good time credit on October 27, 2008. Plaintiff asserts that on January 11 and March 17, 2009, defendant Turner falsified misconduct tickets stating "get these tickets reversed too." Plaintiff claims that on May 4, 2009, defendant Turner took plaintiff's identification card out of the cell window in an attempt to induce plaintiff into a confrontation.

Defendant Turner states that he issued a major misconduct charge for disobeying a direct order on January 11, 2009, when plaintiff refused to flush his toilet when ordered. Plaintiff was found guilty of the charge at a hearing on January 29, 2009. On March 17, 2009, defendant Turner again cited plaintiff for disobeying a direct order when plaintiff refused to take his mattress off the floor and place it back on his bunk. Plaintiff was found guilty of that charge on April 6, 2009.

Plaintiff requests $750,000 in compensatory damages, $1,700,000.00 in punitive damages, and $177.00 for each day that he has spent in administrative segregation. Defendants move for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).

Defendants argue that they are entitled to Eleventh Amendment immunity and qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635,

641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

Defendants argue that plaintiff is not entitled to re-litigate in federal court his misconduct hearing convictions. However, as plaintiff points out he is entitled to assert in federal court that he was denied due process during the misconduct hearing proceedings. Plaintiff argues that he should not have been found guilty of insolence from the incident with defendant Koskinen because there was a finding that he did not commit an assault. According to plaintiff, if he did not commit an assault then he could not have committed insolence. Plaintiff further states that the hearing officer did not have authority to change the charge from assault to insolence. Additionally, plaintiff argues that both defendants issued fabricated misconduct tickets.

Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny

641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

Defendants argue that plaintiff is not entitled to re-litigate in federal court his misconduct hearing convictions. However, as plaintiff points out he is entitled to assert in federal court that he was denied due process during the misconduct hearing proceedings. Plaintiff argues that he should not have been found guilty of insolence from the incident with defendant Koskinen because there was a finding that he did not commit an assault. According to plaintiff, if he did not commit an assault then he could not have committed insolence. Plaintiff further states that the hearing officer did not have authority to change the charge from assault to insolence. Additionally, plaintiff argues that both defendants issued fabricated misconduct tickets.

Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny

a prisoner access to evidence that may pose a security concern if disclosed. *Id.* Plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that plaintiff was guilty of the misconduct charge was supported by the record. Petitioner was originally found guilty of assault and battery on defendant Koskinen. On rehearing, petitioner was again found guilty of the same conduct, but the charge was reduced to insolence. In the reasons for this finding, the hearing officer stated:

> I find that this prisoner is guilty of insolence. I base this upon the fact that he did touch, bump or cause the teacher's chair to move. The video does not show this area sufficiently to determine the manner in which the prisoner moved the chair. In the rehearing order it stated that, "it is not disputed that the prisoner went behind the teacher and in some measure pushed the teacher in her chair while doing so." The prisoner had no authorization to be in this area. This was the exit way from the class and the prisoner said that the teacher told him to sit back down. He was seen holding his folder so it is likely that he was going to the exit to await class dismissal. However, the prisoner knew that there was no sufficient room to get by as the teacher had her chair there. He would not have been able to get behind her as there was less than 12 inches of space there. The prisoner had just written a grievance on the teacher as he was upset with her not processing his request to be waived from the GED requirement. He said he had also turned his desk around so as to not have to look at her. he also said there was some run in over a calculator and he was upset about that. These side issues all tell me he was upset with the teacher. Still, he went to where she was. He walked behind her. He moved the chair. (I do not believe it would have been with both hands or that he had any intent to do more as he was holding his folder. Had he intended to go there and physically intimate [sic] her by shoving the chair with force or to assault her, he would not have had the folder. Also it is more logical if his intent was to actually commit an assault, that he would have struck her directly, not her chair.) Instead by getting this physically close to her and then to nudge, bump or move her chair, I find that this was behavior intended to cause alarm in an employee which is part of the insolence definition. While insolence is not normally a part of an assault and battery charge, I find it appropriate here as is the interpretation of the prisoner's action of making contact with the chair which is being interpreted. His behavior was inappropriate and he is responsible for it. However, I do not believe that he viewed the moving of the

teacher's chair as intending to physically abuse her. I find it more logical and likely it was to harass her a bit for not acting quickly on his request.

The prisoner was already issued a sanction on the prior charge. No additional sanction is imposed.

It is clear that plaintiff received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985).

Similarly, plaintiff has not supported his claim that his due process rights were violated by defendant Turner. Plaintiff was found guilty on both misconduct tickets issued by defendant Turner. Plaintiff was found guilty of disobeying the order to flush his toilet. The hearing officer explained:

> Prisoner does not deny that the reporter told him to flush his toilet. Prisoner says he could not flush his toilet because it was not working. However, prisoner could have attempted to flush the toilet when the reporter told him to do so. Prisoner voluntarily failed to comply with the order of the reporter by not attempting to flush his toilet; rather he stood at his sink. I find that the order was reasonable in that compliance with the order would not create a significant risk of serious harm to prisoner's physical well-being, the order did not conflict with a prior, but presently effective order, and compliance with the order was physically possible.

Plaintiff was also found guilty of disobeying the order to place one of his mattress on the bunk. The hearing officer stated:

> Prisoner does not deny that the reporter told him to put one of the mattresses on his cell and place it on his bunk. Prisoner's medical detail does not prevent him from placing one of the mattresses on his bunk; it just allows him to have two mattresses, one on the floor and one on the bunk. I find that the order was reasonable in that compliance with the order would not create a significant risk of serious harm to prisoner's physical well-being, the order does not conflict with a prior but presently effective order, and compliance with the order was physically possible. Prisoner says he complied with the order, but it sounds like from his testimony that he was arguing with the reporter, saying that he was going to write a grievance, instead of complying with the order in a timely manner. Prisoner voluntarily failed to comply with the order of the reporter by not putting the mattress on the bunk when the reporter told him to do so.

Plaintiff simply asserts that the misconduct tickets were fabricated. However, facts were presented at the misconduct hearing that supports the findings of the hearing officer. Plaintiff has not presented any specific argument that could support his claims that his procedural due process rights were violated. In the opinion of the undersigned, plaintiff has failed to show that his constitutional rights were denied.

Defendants have asserted that plaintiff, who is a black prisoner, fails to support an equal protection rights claim. It is not clear that plaintiff is pursing an equal protection claim. To the extent that he is claiming that his equal protection rights have been violated, it is the opinion that such a claim should be dismissed. Plaintiff has failed to present any allegation that could support a violation of the Equal Protection Clause. To establish a violation of the Equal Protection Clause, a prison inmate must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See McCleskey v. Kemp*, 481 U.S. 279 (1987); *Heckler v. Mathews*, 465 U.S. 728 (1984); *Village of Arlington Heights v. Metropolitan*

*Housing Development Corporation*, 429 U.S. 252, 265 (1977). In the instant action, plaintiff has failed to plead with any specificity facts demonstrating a discriminatory purpose. Therefore, in the opinion of the undersigned, plaintiff has failed to state a viable equal protection claim.

Similarly, it is unclear whether plaintiff is asserting a retaliation claim against defendants. In the opinion of the undersigned, a retaliation claim is unsupported by fact. Plaintiff has asserted that defendants fabricated misconducts against him, and the misconduct tickets were written simply to justify keeping him confined in administrative segregation. Plaintiff has not presented any basis for his belief that the misconducts were fabricated other than he feels that they should not have been issued. Plaintiff has not contested that he committed the acts which lead to the misconduct convictions. In fact, it appears that plaintiff admits most of the underlying acts that are set forth in his misconduct convictions. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has alleged that he wrote various grievances and the misconduct tickets written clearly qualify as adverse action. However, plaintiff cannot show that the misconduct tickets were written because of his grievance filings. Plaintiff has not attempted to connect his grievance

filings to the misconduct tickets. Moreover, it is undisputed that plaintiff took the actions that lead to his misconduct convictions. In the opinion of he undersigned, defendants are entitled to qualified immunity because plaintiff cannot establish that defendants' actions violated any clearly established federal or constitutional rights.

Plaintiff has filed a "Request For Protection Order," and a letter request to add his Buddhist diet issues to his injunctive relief request. Plaintiff alleges that he is the victim of harassment, retaliation, discrimination, humiliation and fabricated misconduct tickets. Plaintiff alleges that he is also being denied his request for a Buddhist diet in violation of his First Amendment rights. Plaintiff alleges that he is in fear for his life and requests a transfer to a different facility. Plaintiff was originally housed at the Alger Maximum Correctional Facility (LMF). It is at LMF where the underlying actions in the complaint allegedly occurred. Plaintiff is making this request to transfer to a different facility while housed at MBP.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

    1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

    2. Whether the movant has shown irreparable injury.

    3. Whether the preliminary injunction could harm third parties.

    4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). For the reasons stated, I am recommending that this action be dismissed. Moreover, a prisoner has no right under federal law to compel or prevent a transfer to another facility. *See*, *Burr v. Duckworth*, 547 F. Supp. 192 (N.D. Ind. 1982); *affirmed*, 746 F.2d 1482 (7th Cir. 1984); (absent a statute or regulation giving rise to some right or justifiable expectation, refusal to transfer does not constitute violation of a constitutionally protected or recognized interest); *Finetti v. Soley*, 73 A.D.2d 955, 424 N.Y.S.2d 273 (1980) (absent a violation of positive statute or a denial of constitutional rights, refusal to transfer is not judicially reviewable); *accord*, *State v. Ryan*, 351 N.W.2d 186 (Iowa 1984); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986) (prison regulations allowed, but did not require, transfer where all criteria were met by prisoner; authorities retained complete discretion to transfer; thus no liberty interest created); *Lamb v. Maschner*, 633 F. Supp. 351 (D. Kan. 1986) (transsexual requested transfer to woman's prison; denied); *accord*, *Meriwether v. Faulkner*, 821 F.2d. 408 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987). Michigan's statutes and regulations give the prison authorities complete discretion regarding placement of prisoners. *See* Michigan Department of Corrections Policy

Directives 03.03.110 and 05.01.140; MCL 791.264; MSA 28.2324. There is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated. *Meachum v. Fano*, 427 U.S. 215 (1976); *Olim v. Wakinekona*, 461 U.S. 238 (1983). Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). In the opinion of the undersigned, that showing has not been made here.

Accordingly, it is recommended that defendants' motion for dismissal and/or summary judgment (Docket #30) be granted and this case be dismissed in its entirety. It is further recommended that plaintiff's motions for injunctive relief (Docket # 38 and #43) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 3, 2011